**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HASHMATULLAH FAIZI, | : |
| | : |
| Plaintiff, | : Civil Action No.:   24-839 (RC) |
| | : |
| v. | : Re Document No.:   5 |
| | : |
| MERRICK B. GARLAND, *et al.*, | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO STAY; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Hashmatullah Faizi ("Plaintiff"), an Afghan citizen proceeding *pro se*, brings this suit to compel (1) Merrick B. Garland, United States Attorney General, (2) Antony J. Blinken, Secretary of State, (3) Rena Bitter, Assistant Secretary of State, (4) Alejandro Mayorkas, Secretary of Homeland Security, (5) Christopher Wray, Director of the Federal Bureau of Investigation ("FBI"), and (6) Ur M. Jaddou, Director of U.S. Citizenship and Immigration Services, in their official capacities (collectively, "Defendants"), to adjudicate his visa application. By the time he filed his complaint, Plaintiff had been awaiting Chief of Mission ("COM") approval for approximately eleven months. Plaintiff alleges unreasonable delay under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and unique procedural violations of the Afghan Allies Protection Act of 2009 ("AAPA"), Pub. L. No. 111-8, § 602(a), 123 Stat. 807 (2009), *codified as amended in* 8 U.S.C. § 1101 note. Defendants move to dismiss or, in the alternative, stay this suit in anticipation of a motion to consolidate with the ongoing *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the U.S. v. Blinken*, No.

1:18-cv-1388 (D.D.C.) ("*Allies*") class action litigation. They contend that Plaintiff is a mandatory member of that class and seeks the same injunctive relief. Defendants also move to dismiss Attorney General Garland and FBI Director Wray as improper defendants. For the foregoing reasons, the Court grants Defendants' motion to stay, grants their motion to dismiss in part with respect to dismissing defendants Garland and Wray, and denies their motion to dismiss in part on all other grounds.

## II. BACKGROUND

Plaintiff has for several years sought COM approval for a Special Immigrant VISA ("SIV") under the AAPA.[1] Compl. ¶ 9; Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mot.") at 1. He first applied on August 8, 2021, basing his eligibility on his employment as a driver for the U.S. State Department at the Justice Center in Parwan, Afghanistan. Compl. ¶ 3. Almost two years later, the Department of State denied Plaintiff's request because it "lack[ed] sufficient documents to make a determination." Ex. 2 to Compl., ECF No. 1-2. Plaintiff appealed this decision on April 11, 2023, and he also provided additional documentation. Ex. 4 to Compl., ECF No. 1-4. Plaintiff still awaits a decision on his administrative appeal. *See generally* Compl.

Defendants moved to dismiss Plaintiff's complaint under the first-to-file rule, arguing that Plaintiff's claims are duplicative of those at issue in the ongoing *Allies* class action litigation. Defs.' Mot. at 9. In the alternative, Defendants request that the Court stay these proceedings so that they may move for consolidation with the *Allies* class action under Local Rule of Civil Procedure 40.5(d). Defs.' Mot. at 16–17. Additionally, Defendants seek to dismiss Attorney General Merrick Garland and FBI Director Christopher Wray from the action pursuant to Federal

---

[1] Certain Afghan nationals who have worked for the U.S. government in Afghanistan, and who experience threats because of their service, are eligible to apply for special immigrant visas and then for admission to the United States. *See* AAPA § 602(a).

Rule of Civil Procedure 12(b)(1).  Plaintiff opposes Defendants' first-to-file argument but does not dispute their Rule 12(b)(1) argument.  Pl.'s Mem. of Law in Opp'n to Defs.' Mot. Dismiss ("Pl.'s Opp'n") ¶¶ 1–13, ECF No. 8.  The Court notes that because Plaintiff is proceeding *pro se*, it construes his filings liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

### III.  LEGAL STANDARD

Congress passed the AAPA "in part[] to provide an immigration route to the United States for Afghans who had risked their own safety in order to cooperate with American military forces in their fight against the Taliban."  *Airaj v. United States*, No. 15-cv-983, 2016 WL 1698260, at *1 (D.D.C. Apr. 27, 2016).  To qualify for a SIV under this statute, Afghan nationals "must have worked for the United States Government or the International Security Assistance Force for at least one year, provided faithful and valuable service, and experienced an ongoing serious threat as a result."  *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 811 (D.C. Cir. 2024) (quotation omitted); AAPA § 602(b).  For those eligible, the State Department outlines a multi-step process that includes COM approval.  *The Steps of the Afghan SIV Process*, United States Department of State–Bureau of Consular Affairs, https://perma.cc/8KFM-A6UT.  "A Chief of Mission is 'the principal officer in charge of a diplomatic mission of the United States or of a United States office abroad which is designated by the Secretary of State as diplomatic in nature, including any individual assigned under section 3982(c) to be temporarily in charge of such a mission or office.'"  *Rahman v. Blinken*, No. 23-cv-3235, 2024 WL 4332603, at *1 (D.D.C. Sept. 27, 2024) (quoting 22 U.S.C. § 3902(3)).

#### A.  First-to-File Rule

For many decades, "the rule in this [C]ircuit has been that '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one

which is commenced first is to be allowed to proceed to its conclusion first.'" *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (quoting *Speed Products Co. v. Tinnerman*, 171 F.2d 727, 729 (D.C. Cir. 1948)); *see, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co.*, 569 F. Supp. 2d 113, 116 (D.D.C. 2008). "Though no precise rule has evolved, the general principle is to avoid duplicative litigation" between federal district courts. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations omitted). Therefore, when a matter in one federal district court parallels another matter being litigated in a separate forum, "district courts have discretion to stay or dismiss a pending suit [under the first-to-file rule]." *Rahman*, 2024 WL 4332603 at *8–9 (citing *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350 (D.C. Cir. 2003)).

However, "this [C]ourt has repeatedly held that the rule should not be mechanically applied, but rather that due weight should be given to equitable considerations." *Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n*, 975 F. Supp. 2d 57, 63 (D.D.C. 2013). These equitable considerations include "(1) whether all parties are present in both cases, (2) the location of witnesses, and (3) the stage of the respective proceedings." *Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*, 804 F. Supp. 2d 1, 7 (D.D.C. 2011) (citation omitted). Most pertinently, "a district court is within its discretion to refuse to entertain a declaratory judgment action when another proceeding in another jurisdiction [or within the same jurisdiction] will resolve the issue in its entirety." *Lewis v. Nat'l Football League*, 813 F. Supp. 1, 4–5 (D.D.C. 1992). Fundamentally, this question is a "holistic one—*i.e.,* the court should consider 'whether the second-filed action [actually] deserves priority.'" *Coal River Mountain Watch v. U.S. Dep't of the Interior*, 146 F. Supp. 3d 17, 23 (D.D.C. 2015) (alteration in original) (citing *Furniture Brands*, 804 F. Supp. 2d at 4).

4

### B. Motion to Stay

A trial court has broad discretion to stay all proceedings in a case while awaiting the outcome of other proceedings. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis*, 299 U.S. at 254–55). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Local Rule 40.5(d) dictates that after a stay, "[m]otions to consolidate cases assigned to different judges of this Court shall be heard and determined by the judge to whom the earlier-numbered case is assigned."

### C. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), an action or claim must be dismissed when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, on a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In determining whether it has jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and must also construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). However, factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quotation omitted). Furthermore, "[t]he Court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

## IV. ANALYSIS

### A. First-to-File Rule

#### 1. Party Presence – Class Membership

When deciding to apply the first-to-file rule, the Court considers "whether all parties are present in both cases." *Furniture Brands*, 804 F. Supp. 2d at 6–7. Defendants allege that Plaintiff qualifies as a class member in the *Allies* litigation; and because Plaintiff is already a party in that class action, he would not be prejudiced by dismissal or consolidation. *See* Defs.' Mot. at 9. The Court agrees that Plaintiff meets the eligibility criteria of the *Allies* class.

6

*Allies* class membership applies to "all people who have (1) applied for an Afghan . . . SIV pursuant to the [AAPA] . . . by submitting an application for Chief of Mission ('COM') approval, and (2) whose applications have been awaiting government action for longer than 9 months." *Afghan and Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to U.S.*, 334 F.R.D. 449, 453 (D.D.C. 2020). The *Allies* court certified this class and found "that the proposed class meets Rule 23(b)(2)'s requirements." *Id.* at 464. So class membership is mandatory. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("[T]he Rule provides no opportunity for b(1) or b(2) class members to opt out . . . .").

Plaintiff's complaint satisfies both of the *Allies* class membership criteria. Plaintiff applied for an SIV visa under the APPA and is awaiting COM approval. Compl. ¶ 18. Plaintiff also meets the second criterion because he has not heard from the government about his visa adjudication for over nine months. Ex. 4 to Compl. Based on these conditions, Plaintiff is a mandatory member of the *Allies* class.

While there several of the parties in the *Allies* case are not relevant to Plaintiff's case, both cases include overlapping defendants and claims. *See Allies*, 103 F.4th at 811. Any possible witnesses for Plaintiff's case would not be inconvenienced if instead they testified in or submitted affidavits to the *Allies* court because Plaintiff brought this case in the same district and courthouse as the *Allies* litigation. *See* Compl.; *Allies*, No. 1:18-cv-1388. Therefore, equitable concerns about party availability do not disfavor applying the first-to-file rule. As such, the Court finds that the parties and claims substantially overlap, Plaintiff is an eligible class member in the *Allies* litigation, and he cannot opt out of the class action to seek individual relief.

### 2. Stage of Respective Proceedings

The first-to-file rule typically favors older claims over newly filed litigation. *See Coal River Mountain Watch*, 146 F. Supp. 3d at 23. Still, the Court must make a "holistic" determination on "whether the second-filed action actually deserves priority." *Id.* (cleaned up and quotation omitted). Older motions filed as "preemptive strike[s]," for example, and suits filed in bad faith are not favored by the first-to-file rule. *See Stone & Webster, Inc. v. Georgia Power Co.*, 965 F. Supp. 2d 56, 61 (D.D.C. 2013), *aff'd*, 779 F.3d 614 (D.C. Cir. 2015).

The *Allies* class action began on June 12, 2018—nearly 6 years before this case. *Allies* Compl., ECF No. 1. Since then, "[i]n 2019, the district court held that the government had unreasonably delayed processing these applications. In 2020, the court approved a plan requiring the prompt adjudication of applications filed by class members . . . ." *Allies*, 103 F.4th at 811. Following the United States' military withdrawal from Afghanistan, the government "moved to terminate or modify the plan based on changed circumstances." *Id.* The district court acknowledged that these changed circumstances justified modifying the plan, but it refused to terminate the scheme entirely. *Id.* The D.C. Circuit affirmed the *Allies* district court's decision in June 2024. *Id.*

This case, by contrast, is just beginning. The *Allies* class complaint raises similar allegations as Plaintiff's complaint, but *Allies* began long before Plaintiff's cause of action even materialized. *Compare Allies* Compl. (filed June 6, 2018), *with* Compl. ¶ 3 (stating that Plaintiff applied for an SIV for the first time on August 2, 2021). The Court does not find any reason to favor Plaintiff's new claim over the long-standing *Allies* litigation.

### 3. Duplicative Claims

When two cases pose similar legal questions, the Court must remain mindful of "the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated." *See Singh v. Carter*, 185 F. Supp. 3d 11, 18 (D.D.C. 2016) (citation omitted). Litigating considerably similar cases in different courts can encroach on the authority of other courts and may produce inconsistent rulings and "the waste of duplication." *Entines v. United States*, 495 F. Supp. 2d 84, 85 (D.D.C. 2007) (quoting *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 729 (5th Cir. 1985)).

Plaintiff acknowledges that *Allies* is a mandatory class, but he denies that his claim is duplicative because "[t]he class action seeks broad, systemic relief, which may not fully address the individualized issues and specific relief that Plaintiff seeks in his complaint." Pl.'s Opp'n ¶ 7. Plaintiff asserts that his "situation includes unique procedural violations and specific instances of harm that require a detailed examination of his personal circumstances." *Id.* ¶ 5. Among these concerns, Plaintiff lists potential harm to his daughter who, because she is soon to be 21 and currently resides in Afghanistan, "faces the real and imminent threat of persecution by the Taliban and the possibility of being forced into marriage." *Id.* ¶ 10. Defendants respond that Plaintiff's "claims substantially overlap with the claims presented in the *Allies* certified class." Defs.' Reply in Support of Mot. Dismiss Compl. or Stay in the Alternative at 1 ("Defs.' Reply"), ECF No. 9. The Court agrees.

Other members of the *Allies* class share concerns that are as serious and urgent as those of the Plaintiff. *See Allies*, 334 F.R.D. at 454–556 (acknowledging that "Plaintiffs, whose lives, and whose families' lives, are at risk every day their applications are pending"). This includes

concerns about the mistreatment of family members.  *See e.g.*, *Allies*, Am. Compl. ¶ 56, No. 1:18-cv-1388, ECF No. 23 (describing complaint of Mr. Doe-Alpha who worked as a U.S. government contractor who "had to flee his hometown which is controlled by the Taliban . . . and his family members who remained behind have been repeatedly threatened and harassed").  The *Allies* complaint describes risks in Afghanistan similar to those Plaintiff alleges, including threats, robberies, kidnappings, and attacks on civilians.  *Id.* ¶ 50.  Both Plaintiff and the *Allies* class are seeking injunctive relief, and both argue that the government has unreasonably delayed adjudicating their SIV applications.  *See Allies*, 103 F.4th at 812; Compl. ¶¶ 19–33, 34.

Plaintiff is one of potentially thousands of possible plaintiffs awaiting COM approval.  *See Allies*, 103 F.4th at 815–16 ("The parties stipulated that there were thousands of such beneficiaries in October 2021, and it remains undisputed that at least some of these old applications remain pending [in addition to new applications.]").  Indeed, Defendants cite six other cases that the *Allies* court approved for consolidation.  Defs.' Mot. at 17.  Proceeding with Plaintiff's case would be inconsistent with the general principle that "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously."  *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (quotation omitted).  To prevent inconsistent rulings, the Court finds that the first-to-file rule favors the *Allies* class action over Plaintiff's recently filed motion.

### B.  Motion to Stay

In considering a motion to stay proceedings, the Court will not grant a stay if it would "unnecessarily delay proceedings" or when consolidating cases would "necessitate a renewed round of briefing by all parties."  *Bell v. Dep't of Def.*, No. 16-cv-2403, 2018 WL 4637006, at *18 (D.D.C. Sept. 27, 2018).  Consolidation is "particularly appropriate when the actions are

likely to involve substantially the same witnesses and arise from the same series of events or facts." *Singh*, 185 F. Supp. 3d at 18 (quoting *Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009)).  When considering both a motion to dismiss and a motion to stay, a court must balance fairness and potential prejudice to the parties.  *See Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004).  In some cases, staying the case allows parties to "obtain[] the relief sought" in another forum, which could render the present case moot and "obviate the need to decide defendants' pending motions to dismiss." *Barcardi & Co. Ltd. v. Empresa Cubana Exportadora De Alimentos & Productos Varios, Inc.*, No. 04-cv-519, 2007 WL 1541386, at *2 (D.D.C. May 24, 2007) (granting the stay and denying the motion to dismiss in the name of judicial efficiency because resolution of a separate proceeding "may moot this entire case").  "The same reasoning applies here with equal force because resolution of the [*Allies*] action may moot this entire case."  *Id*.  But because a district court "may exercise its discretion to decline jurisdiction for the purpose of judicial economy only in truly 'exceptional circumstances,'" the Court finds that a stay pending a motion for consolidation is preferable to the dismissal that Defendants seek.  *Handy*, 325 F.3d at 352 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983)).

      The Court finds that Plaintiff is already a member of the *Allies* class and therefore his interests are being concurrently litigated in that litigation.  Similarly, Plaintiff has not identified specific procedural developments that distinguish this case from the *Allies* class action, and the outcome of that class action may make Plaintiff's claims moot.  Defs.' Reply at 2.  Because the Court staying this case furthers judicial economy and consolidation will prevent "confusion and prejudice," the Court orders that this case is stayed until the resolution of Defendants' motion to consolidate.  *See Bell*, 2018 WL 4637006, at *18 (quoting *Am. Postal Workers Union v. U.S.*

11

*Postal Serv.*, 422 F. Supp. 2d 240, 245 (D.D.C. 2006)). Plaintiff will have the opportunity to object to this consolidation and present arguments to the *Allies* court pursuant to Local Rule 40.5.

### C. Improper Defendants

Defendants also argue that Attorney General Garland and FBI Director Wray should be dismissed as parties in this action because "Plaintiff fails to tie his alleged injury" to their actions "and no statutory provision supports such a conclusion." Defs.' Mot. at 19. Plaintiff does not dispute or even respond to this argument in either his initial opposition or surreply. *E.g.*, Pl.'s Opp'n at 1.

Because Plaintiff's claims center on an alleged delay in his visa adjudication process, Plaintiff has "standing to proceed against each defendant only to the extent 'that an order from this Court compelling' that defendant to act on Plaintiff['s] petition[] would redress" the alleged injury. *See Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 9 (D.D.C. 2022) (quoting *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017)). For each named defendant, "it must be likely, as opposed to merely speculative" that a favorable decision would hasten Plaintiff's visa adjudication timeline. *See Lujan*, 504 U.S. at 560–61. When a plaintiff does not dispute a defendant's challenge to standing, "the Court will treat [defendant's arguments] as conceded and dismiss." *See Fateh v. Blinken*, No. 23-cv-1277, 2024 WL 864378, at *4 (D.D.C. Feb. 29, 2024).

Plaintiff has failed to allege that he has standing to bring claims against defendants Garland or Wray. In the Complaint, Plaintiff does not provide any information about the Attorney General's ability to expedite his visa application process. *See* Compl. ¶ 10. With respect to FBI Director Wray, Plaintiff alleges that "the FBI is responsible for performing FBI

name checks and other background checks of all applicants for immigrant visa." *Id.* ¶ 15. However, the AAPA does not expressly provide any statutory role for the Department of Justice or the FBI. Defs.' Mot. at 18. The AAPA instead states that the Secretary of Homeland Security, in consultation with the Secretary of State, has the authority to provide the relief that Plaintiff seeks, not the Attorney General or FBI Director. AAPA § 602(b)(1). Furthermore, applicants must clear "a background check and appropriate screening, as determined by the Secretary of Homeland Security." *Id.* § 602(b)(1)(D). Attorney General Garland and FBI Director Wray are not statutorily responsible for these checks.

Accordingly, Plaintiff's Complaint fails to identify a basis to conclude that either Attorney General Garland or FBI Director Wray have the authority to expedite Plaintiff's visa application process. Without such authority, a favorable decision by this Court with respect to these parties cannot redress Plaintiff's alleged harm. Thus, Attorney General Garland and FBI Director Wray are improperly named defendants and Defendants' motion to dismiss them from this action is granted.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Defendants' Motion to Stay is **GRANTED.** An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 11, 2024                                                                 RUDOLPH CONTRERAS
                                                                                                                  United States District Judge